FILED
2008 May-08 PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REGIONS FINANCIAL CORPORATION and SUBSIDIARIES, | ) ) ) ) |
| Petitioner, | ) ) |
| v. | ) CASE NO. 2:06-CV-00895-RDP ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

This matter comes before the court on Petitioner Regions Financial Corporation and its Subsidiaries' (collectively "Regions") Motion to Quash Summons in Part (Doc. # 1), filed on May 8, 2006 and Regions' Motion to Dismiss its Petition to Quash that IRS Summons as Moot (Doc. # 21), filed on July 21, 2007. The parties have fully briefed the issues arising out of Regions' motion, and Regions has submitted for *in camera* review the documents for which it claims a privilege. Upon consideration of the briefs and after an *in camera* examination of the documents, the court finds that Regions' motion is due to be granted.

**I.      Relevant Facts**

The Internal Revenue Service ("IRS" or "Service") is currently reviewing Regions' tax liability for the tax years of 2002 and 2003. (Declaration of Deborah Hawkins, Doc. # 18-3 at ¶¶ 3, 6). During those years, Regions engaged in two transactions that qualify as "listed transactions." On April 18, 2006, the IRS served a summons on Ernst & Young LLP ("E & Y"), the accounting firm that audited Regions' financial information for the relevant years. (Hawkins Decl. at ¶¶ 11, 15).

In August 2006, after Regions reviewed the documents requested by the summons, instructed E & Y to withhold twenty documents totaling 151 pages. (*Id*. at ¶¶ 22-24). Thereafter, E & Y produced roughly 260,000 pages of documents to the IRS. All of the twenty withheld documents relate to a transaction (the "Transaction") into which Regions entered in 2000 with the European Bank for Reconstruction and Development ("EBRD"). Regions claims that these documents are privileged and therefore not subject to the IRS summons. Nine documents were withheld entirely and eleven others were redacted. The documents fall into two categories: (1) Core Documents and (2) Derivative Documents. Pursuant to Regions' motion (Doc. # 20), the court reviewed these documents *in camera*.

### A.   Core Documents

There are four Core Documents that express opinions, evaluate legal theories, and analyze possible IRS attacks on Regions' tax reporting of the Transaction. Three of these documents were created by Alson & Bird LLP ("Alston & Bird"), a law firm retained by Regions to analyze the Transaction. The other document, created by partners at E & Y who are not involved in auditing Regions, reviews and evaluates both the Transaction and the Alston & Bird opinions.

The Core Documents were created at the behest of Samuel Upchurch, who was then Regions' general counsel. (Affidavit of Upchurch, at ¶ 7). Regions' general counsel typically only becomes involved in analyzing Regions' tax liabilities if litigation is like to result from a tax position. (*Id*. at ¶ 14). Because Upchurch suspected that the IRS would audit the Transaction, he elicited a formal opinion regarding the tax consequences from Alston & Bird. (Upchurch Aff., ¶ 9; Affidavit of Wheeler, ¶¶ 2-4).

Upchurch also elicited an additional tax opinion from E & Y, again because he anticipated conflict with the IRS. (Upchurch Aff., ¶ 10, Affidavit of David Garlock, ¶ 2). Regions gave E & Y the opinion of Alston & Bird. (Upchurch Aff., ¶ 11; Garlock Aff., ¶ 5). Upchurch understood that E & Y would keep confidential all information it received concerning the Transaction. (Upchurch Aff., ¶ 15). David Garlock, a partner at E & Y who helped perform the tax analysis, has no knowledge of E & Y disclosing any of the received Transaction documents. (Garlock Aff., ¶ 8). Karole Lloyd, the E & Y partner in charge of coordinating her firm's business with Regions, certifies that it is both E & Y's policy and duty to keep information received from Regions confidential. (Affidavit of Karole Lloyd, ¶ 11).

### B. Derivative Documents

The Derivative Documents discuss, quote, or explain the Core Documents. They consist of emails, memoranda, and other less formal documents created by Regions or E & Y. There are sixteen Derivative Documents, five of which Regions seeks to have withheld completely and eleven of which it produced in redacted form.[1] The redacted portions of the documents relate only to discussions of the Core Documents.

## II. Areas of Dispute

Whether a taxpayer must produce its tax accrual workpapers in response to an IRS summons is a question which requires a multi-step analysis. First, the court must address whether the

---

[1] Neither of the parties' briefs argues that circumstances could justify finding that some, but not all, of the disputed documents are privileged. Indeed, both sides take an "all or nothing" approach. The court's *in camera* review of the documents suggests that this approach is reasonable; however, because neither side has called on the court to decide this issue, the court will assume without deciding that the court's conclusion must be "all of nothing." Either all or none of the documents are entitled to protection.

summons is proper under the four-part test laid out in *United States v. Powell*, 379 U.S. 48 (1964). Second, the court must determine whether any of the documents are privileged. Third, if any of those documents are privileged, the court must address whether the privilege has been waived. Finally, the court must determine if the IRS has overcome those privileges by showing substantial hardship.

In this case, as to the first step of the analysis, Regions does not contest that the IRS summons is proper on its face under *Powell*.[2] However, Regions asserts that the documents withheld from production are protected by the work product privilege. Accordingly, the heart of this dispute is the scope of the work product privilege as it applies to IRS summons seeking tax accrual workpapers and whether Regions has waived the privilege by its disclosure of the contested documents to it independent auditor, E & Y. The court need not address the final step of the analysis as the IRS has not contended that it will face hardship sufficient to overcome the work product privilege.[3]

---

[2] To be clear, Regions does not completely concede that the IRS summons complies with the *Powell* requirements. It contends that the application of the work product privilege makes the documents fall outside of what *Powell* allows because (1) the documents are privileged and therefore not "proper" and (2) Regions has produced all "tax accrual workpapers" as that term is defined in the caselaw. Regions' *Powell* contentions, however, collapse into its analysis of the work product doctrine and therefore are properly viewed through the lens of privilege. In other words, but for the application of the work product privilege, the contested documents would satisfy the *Powell* requirements.

[3] This opinion will not address the open question of what hardship burden applies, *i.e.*, whether any showing is sufficient to require an attorney to disclose her mental impressions, conclusions, opinions, or legal theories. *See Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (contrasting the approaches of several courts of appeal, some of which provide absolute protection for opinion work product and some that provide only heightened protection, and stating that "[w]e do not decide [between the two approaches] at this time"). The IRS has made neither a legal argument not an evidentiary showing that suggests that it could demonstrate a degree of hardship sufficient to overcome whatever burden actually applies.

In sum, the court's analysis will address the two components of the four-part analysis: (1) whether the contested documents are eligible, as a matter of law, for protection under the work product privilege; and (2) whether Regions has waived the privilege by its disclosure of the contested documents to E & Y.

**III.   Analysis**

   **A.   Documents Prepared in Anticipation of Litigation Are Eligible for Protection as Work Product as a Matter of Law**

Federal Rule of Civil Procedure 26(b)(3) provides, in relevant part:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

FED.R.CIV.P. 26(b)(3). This rule, which codifies the holding of the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), gives rise to the work product privilege claimed by Regions. In *Upjohn v. United States*, 449 U.S. 383 (1981), the Supreme Court held that the work product privilege applies to IRS summonses. *Upjohn*, 449 U.S. at 398.

Courts have wrestled with the articulation of a clear test for interpreting what constitutes "prepared in anticipation of litigation" in the context of an IRS summons. The Supreme Court has not provided a controlling standard, and a split has developed between the various courts of appeal. The Fifth Circuit has articulated the "primary motivating purpose" test. *United States v. El Paso*

*Co.*, 682 F.2d 530, 542 (5th Cir. 1982) ("'Litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation'")[4] (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). This test contrasts with the "because of litigation" test articulated by the Second Circuit in *U.S. v. Aldman*, 134 F.3d 1194 (2nd Cir. 1998). The Second Circuit test affords broader protection than the "primary motivating purpose" test. Quoting from Wright & Miller, the *Aldman* opinion stated the test this way: "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Aldman*, 134 F.3d at 1202 (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, 8 FEDERAL PRACTICE & PROCEDURE § 2024 (1994)).

The parties disagree about which of these two test applies in the Eleventh Circuit. The IRS contends that the Eleventh Circuit adopted the "primary motivating purpose" test in a decision from 1983. Regions disagrees and further argues that the Fifth Circuit did not formally adopt the "primary motivating purpose" test before the creation of the Eleventh Circuit. As explained below, the court concludes that no binding Fifth or Eleventh Circuit decision clearly adopts the "primary motivating purpose" test; however, the court also concludes that the analysis of the merits of this motion do not require the court the find which test is actually binding because a fair application of both tests yields the same outcome.

---

[4] In its brief, the IRS makes a significant error: the IRS quotes *El Paso* as saying "primarily *or exclusively* to assist in future litigation." (Doc. # 18-2 at 15) (emphasis added). The word "exclusively" appears neither on the page cited nor anywhere else in the *El Paso* opinion. There is no reason for the court to conclude that the IRS's misstatement was anything more than an oversight, but the court notes the mistake serves the IRS's interest in making the "primary motivating purpose" test appear more restrictive than the Fifth Circuit actually held it to be. Self-serving mistakes, such as this one, are not acceptable.

The IRS argues that the Eleventh Circuit adopted the "primary motivating purpose" test in *Matter of Newton*, 718 F.2d 1015 (11th Cir. 1983). The IRS's reliance on *Newton* is misplaced because *Newton* does not address the extent of the work product privilege. In *Newton*, the Eleventh Circuit held that it would not recognize an *accountant* work product privilege, a privilege that the Second Circuit had recognized in *U.S. v. Arthur Young*, 677 F.2d 211 (2nd Cir. 1982). *Newton*, 718 F.2d at 1021. However, the *Newton* opinion also cites *Upjohn* for the premise that "[t]he Supreme Court has held, for example, that the . . . attorney work product doctrine limit[s] the scope of the IRS summons power." *Id*. (citing *Upjohn,* 449 U.S. at 681). The *Newton* court did not articulate or adopt a test as to what anticipation of litigation means in the context of an IRS summons seeking documents prepared by *attorneys*. The court declined to follow *Arthur Young* and create a new and separate accountant-specific privilege,[5] but did not take any position as to the traditional work product doctrine. Therefore, the Service is incorrect in arguing that *Newton* applies to the facts of this case.

Although the Eleventh Circuit did not explicitly adopt the primary motivating purpose test in *Newton*, the court nonetheless must consider whether the Fifth Circuit's "primary motivating purpose" test is binding, *i.e.*, whether it was adopted prior to the split that created the Eleventh

---

[5]The Eleventh Circuit did not make the sweeping finding in *Newton* that an accountant's work cannot be protected by the work product privilege. To the contrary, the court in *Newton* stated that the accountant work product created in the Second Circuit's *Arthur Young* opinion should have been called an "accountant-client privilege" because it was based on the policy of "encouraging corporate officers to reveal openly to their independent accountants the corporation's tax vulnerabilities." *Newton*, 718 F.2d at 1021 n.8. The court in *Newton* refused to recognize a *new* privilege, not to abrogate the *existing* work product doctrine. *Newton* cannot be read to prevent the protection of trial preparation materials simply because they were created by an accountant. *See* FED. R. CIV. P. 26(b)(3)(A) (extending work product protection to materials created by a "party or its representative"). The accountant work product privilege in *Newton* bears only a semantic relationship to the traditional work product privilege; the two are legally distinct.

Circuit out of the Fifth.[6]  After a careful reading of the relevant cases, and consideration of the persuasive analyses of other courts, this court concludes that the "primary motivating purpose" test was not adopted by the Fifth Circuit prior to the creation of the Eleventh Circuit.

Two rulings of the Fifth Circuit are in tension both of which occurred prior to the creation of the Eleventh Circuit.  The panel in *Hoover v. United States Dept. of the Interior*, 611 F.2d 1132 (5th Cir. 1980) held that appraisal documents prepared by the government for parcels of property subject to condemnation were protected as work product.  *Hoover*, 611 F.2d at 1139 n.8.  The court found that the appraisals were prepared in anticipation of litigation and stated that "[d]uring the land acquisition process, the government must necessarily anticipate that negotiations for purchase will fail, thereby requiring condemnation.  Appraisals are therefore obtained *both* for the purpose of providing a basis for an offer, *and* to support a claim of just compensation at a subsequent condemnation suit."  *Id.* (emphasis added).  The court did not articulate a test to guide later courts in deciding the same issue, but it is at least clear that *Hoover* does not require a party claiming the work product privilege to show that its was exclusively or predominately motivated by litigation in making a document.

Later, another Fifth Circuit panel decided *United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981).  In *Davis*, the court held that documents created by two taxpayers and their attorneys in preparation for filing tax returns were not eligible for protection under the work product doctrine. 636 F.2d at 1039-40.  In finding that the documents were not created in anticipation of litigation, the court opined that "litigation need not necessarily be imminent . . . as long as the primary motivating

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

purpose behind the creation of the document was to aid in possible future litigation." *Id* at 1040 (citations omitted). Because "there [was] no evidence that Davis had reason to expect future trouble with the IRS," the Fifth Circuit concluded that the documents were not made in anticipation of litigation and therefore were not protected work product. *Id.*

For several reasons, the court believes that the "primary motivative purpose" test of *Davis* does not apply to this case. First, *Davis* involved <u>filing</u> tax returns, not responding to an IRS summons or anticipating litigation arising from the tax consequences of a transaction. While it is true that a tax return can lead to litigation, analyzing a listed transaction is much more closely connected to litigation than preparing a tax return. In fact, the Second Circuit has opined that because "there was no showing whatsoever of anticipation of litigation," the *Davis* language "might be characterized as dictum, or in any event a statement going far beyond the issues raised in the case."[7] *Aldman*, 134 F.3d at 1198. Even without viewing *Davis* language as dicta, the factual differences between *Davis* and the present case make *Davis* wholly distinguishable.[8]

Furthermore, to the extent that *Davis* and *Hoover* conflict directly on the issue of which standard applies to determine the scope of the work product privilege, *Hoover* controls under the

---

[7]The *Aldman* opinion then traces the development of the primary motivating purpose test through the subsequent opinions of *El Paso* and *United States v. Gulf Oil Corp.*, 760 F.2d 292 (Temp. Emer. Ct. App. 1985), showing that the test has led to the protection of documents produced "*to aid* in litigation" and not "in anticipation of litigation." *Aldman*, 134 F.3d at 1198 (emphasis supplied). The Second Circuit found the Fifth Circuit's test to be "at odds with the text and the policies of [Rule 26]." *Aldman*, 134 F.3d at 1198. The court is persuaded by the Second Circuit's cogent analysis.

[8]Tellingly, the IRS relies primarily on the Fifth Circuit's later opinion of *El Paso*, and not *Davis* in explaining how the "primary motivating purpose" test should apply to this case. It is clear that *El Paso* is not binding on this court because it was decided after the creation of the Eleventh Circuit.

Eleventh Circuit's "prior panel precedent" rule. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000) (stating "[u]nless and until the holding of a prior decision is overruled by the Supreme Court or by the *en banc* court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first"). A case from the Southern District of Alabama discusses the tension between *Davis* and *Hoover*. In *United States v. Gericare Medical Supply, Inc.*, No. CIV.A.99-0366-CB-L, 2000 WL 33156442 (S.D. Ala. Dec. 11, 2000), the court noted that "[b]ecause negotiations are required in every case and litigation only in those in which negotiations fail, *Hoover* appears inconsistent with a requirement that the 'primary purpose' of preparing the document must be to aid in litigation." *Gericare*, 2000 WL 33156442 at *2.

There are therefore two independent and singularly sufficient legal reasons to decline to apply the "primary motivating purpose" rule of *Davis*: the *Davis* language is either (1) *dicta* or (2) a departure by a Fifth Circuit from its previous *Hoover* holding. Because this court finds that *Davis* is not binding in the Eleventh Circuit, the parties have called upon the court to decide how the Eleventh Circuit would resolve this issue. If it were forced to decide the question, the court concludes that the Eleventh Circuit would align itself with the majority of the other courts of appeal and adopt the "because of litigation" test.[9] However, it is not necessary to determine which test

---

[9] While the Southern District of Alabama in *Gericare* made a strong argument that *Davis* was not controlling, it ultimately did not decide whether *Davis* is binding in the Eleventh Circuit, finding that while litigation was not a certainty in *Gericare*, it was possible and that the documents in that case were therefore privileged work product under the more-restrictive Fifth Circuit test. 2000 WL 33156442 at *2. *Gericare* cites *Davis* in discussing how imminent litigation must be to satisfy the primary motivating purpose test: "litigation was not a certainty at the time the documents were created, [though] the very authorities urged by the [party opposing the application of the work product privilege] acknowledge that litigation need not be certain but only 'possible.'" *Id.* at *2 (citing *Davis*, 636 F.2d at 1040). This court finds much wisdom in *Gericare*'s balance.

applies here because the result in this case is the same regardless of which test the court applies.[10] Under both tests, the critical issue is the purpose for which the documents were created. *Compare Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992) (applying the "because of litigation" test and stating "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question") *with El Paso*, 682 F.2d at 543 (applying the "primary motivating purpose" test and stating "[b]usiness imperatives, not the press of litigation, *call these documents into being*") (emphasis added). The IRS urges that Regions sought the opinions embodied in the withheld documents so that Regions could create a sufficient tax reserve that accurately reflected its contingent liabilities, thereby satisfying the requirements of E & Y in order to get an unqualified audit opinion. In that vein, the IRS argues that "E & Y's withheld tax accrual workpapers are not entitled to work product protection because they would have been prepared, even in the absence of the prospect of litigation, to comply with Regions' public reporting requirement." (Doc. # 18-2 at 16). Regions counters that it would not have contingent liabilities at all if it did not think that it was going to be sued by the Service over the tax consequences of the Transaction. (Doc. # 22 at 19).

Regions has the stronger argument. Were it not for anticipated litigation, Regions would not have to worry about contingent liabilities and would have no need to elicit opinions regarding the likely results of litigation. The circumstances present in this case were considered recently by the District of Rhode Island in *United States v. Textron*, 507 F.Supp. 2d 138 (D.R.I. 2007). In *Textron*,

---

[10]Both Regions and the IRS argue in their briefs that they are entitled to prevail regardless of which test the court applies. The fact that both parties make this argument further confirms to the court that the parties do not contend that only some of the documents should be protected – neither party has advanced a theory that would allow some but not all of the documents to be privileged.

the court applied the "because of litigation" test and held that tax accrual workpapers were protected under the work product privilege. *Textron*, 507 F.Supp. 2d at 150 (stating "there would have been no need to create a reserve in the first place, if Textron had not anticipated a dispute with the IRS that was likely to result in litigation or some other adversarial proceeding").

While the *Textron* opinion did not alternatively consider the "primary motivating purpose" test, there are no facts in this record to suggest that the outcome under the two tests would be different. Litigation was not certain at the time that Regions elicited the outside opinions, but *Davis* does not require certainty: "litigation need not necessarily be *imminent*, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in *possible* future litigation." *Davis*, 636 F.2d at 1040 (citations omitted) (emphasis added). It is clear in this case that Regions was primarily motivated by litigation when it solicited opinions about the potential outcomes of *litigation* from Alston & Bird and E & Y. The fact that Regions undertook the time and expense of consulting outside firms to assess its potential liabilities shows that it believed litigation to be likely, and this court cannot say that Regions' subjective belief was objectively unreasonable. *See United States v. Roxworthy*, 357 F.3d 590, 594-95 (6th Cir. 2006) (finding that the existence of a memorandum analyzing the likely outcomes of litigation arising out a taxpayer's corporate structuring was itself evidence that the memorandum was made in anticipation of litigation).

The IRS's brief states that this court should not find the documents to be protected because "Regions has not offered any proof that the [documents] were not created, used by or available for use by the independent auditors of Regions'[s] public financial statements." (Doc. 18-2 at 17). It appears that the Service's argument is that Regions cannot claim work product production if the

12

contested documents had *any use other* than litigation preparation. The IRS has not cited, nor has the court found,[11] any authority that articulates such a test. Indeed, the court has found no support for the conclusion that a party must show that it was motivated by preparation for litigation *and nothing else* in order to claim that a document is protected work product. The Service's argument is unpersuasive.

It is undisputed that the documents sought by the IRS contain the mental impressions and opinions of Regions' lawyers. Regions concedes that the IRS is entitled to know the facts of the Transaction, but it maintains that its representatives' opinions about the Transaction are privileged. The IRS never clearly says why it *needs* these opinions to assess adequately Regions' tax liability when it already possesses the original factual documents from which these opinions were derived.

Based on the *in camera* review of the documents, the court finds that the contested documents contain precisely the kind of legal analysis that the work product doctrine exists to protect, not facts that bear on Regions' tax liability. *See Roxworthy*, 457 F.3d at 595 (stating "the IRS would appear to obtain an unfair advantage by gaining access to KPMG's detailed legal analysis of the strengths and weaknesses of [the taxpayer's] position. This factor weighs in favor of recognizing the documents as privileged"). Even if the documents Regions has already allowed to be produced were not made "in anticipation of litigation" (a question not before this court), the court finds that the documents in dispute here were.[12]

---

[11]To the extent that there is a non-binding case that stands for the proposition that documents must be used exclusively for litigation preparation, the court would reject such a holding out of hand. Even the strictest application of the "primary motivating purpose" test would still allow a document whose *creation* was primarily motivated by litigation to be *used* in some other fashion.

[12]The *Textron* decision is again persuasive on this point. In *Textron*, the court found that the work product privilege protected all of the company's tax accrual workpapers, including "the dollar

Thus, the court finds that Regions has carried its burden of showing that the contested documents were created in anticipation of litigation regardless of whether this court applies the "because of litigation" or "primary motivating purpose" test. While the documents may have had some utility outside of litigation, they would not have been created were Regions not *primarily concerned* with litigating with the IRS concerning the Transaction. The rationale for protecting these documents is especially strong because Regions is only seeking to withhold the mental impressions and legal theories of its counsel. As a result, the court finds that, as to the second step of the analysis, the work product privilege applies to the contested documents. The court will now analyze whether under the third step of the analysis Regions has waived the work product privilege.

**B.    Regions Has Not Waived the Work Product Privilege by Disclosing the Contested Documents to its Independent Auditor**

It is axiomatic that the work product privilege is not absolute and can be waived. Waiver occurs when the documents are either made available to an adversary or to a third party that could serve as a conduit to an adversary. *See United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997) (stating that "work product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection"); *Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-CV-2152, 1998 WL 2017926 at *3 (S.D. Fla. May 18, 2008) (stating that "if it is clear that the information contained in the document was intended to be disseminated to those outside the cloister of confidentiality, then the privilege is waived" and finding

---

amounts reserved to reflect the possibility that Textron might not prevail in . . . litigation." 507 F.Supp. 2d at 142-43, 149-151. The documents that Regions seeks to withhold are less broad than those withheld in *Textron* because Regions has already disclosed the fact and amounts of its reserves. (*See, e.g.*, Privilege Log Document # 12) (stating in an un-redacted paragraph the amounts of the tax reserves Regions made in 2000-03).

that disclosure to independent auditors "does not waive the work product privilege, since there is an expectation that confidentiality of such information will be maintained by the recipient"); *Textron*, 507 F.Supp. 2d at 152 (stating "only disclosures that are inconsistent with keeping the information from an adversary constitute a waiver of the work product privilege") (citing *Gutter*). The IRS argues that Regions waived any work product privilege by disclosing the contested documents to E & Y, Regions' independent auditors. Regions counters that, because the E & Y auditors "are not adversaries of Regions and are not conduits to Regions' adversaries," disclosing the contested documents to E & Y did not waive the privilege. (Doc. # 22 at 27).

Ironically, both parties cite *United States v. MIT*, 129 F.3d 681 (1st Cir. 1997) in support of their respective positions. In *MIT*, the First Circuit found that the Massachusetts Institute of Technology's ("MIT") disclosure of its expenses to the Defense Contract Audit Agency ("DCAA") waived any work product privilege because the DCAA was a potential adversary. *MIT*, 129 F.3d at 687. Because MIT did work for the Pentagon, it was audited by the DCAA, the auditing agency of the Department of Defense. *Id.* at 682-83. Notably, the DCAA did not promise to keep any documents received from MIT confidential. *Id.* at 683. After MIT disclosed certain documents to the DCAA, the IRS issued a summons to MIT to determine if MIT was still eligible for its tax exemption because of its business interests. *Id.* at 682. MIT claimed that the documents it divulged to the DCAA were privileged work product. *Id.* at 687. The court, finding that MIT waived the privilege, focused on the fact the DCAA was a potential adversary to MIT. *Id.*

The case before this court is clearly different from *MIT*. E & Y was an independent auditor like the DCAA, but it was not a potential adversary of Regions. The decisive factor in *MIT* was that the DCAA, as a branch of the Department of Defense, could learn something that would lead to

15

conflict between the Department and MIT.  *Id.*  There is simply no conceivable scenario in which E & Y would file a lawsuit against Regions because of something E & Y learned from Regions' disclosures.  Moreover, and perhaps most importantly, a confidentiality agreement protected any documents Regions gave to E & Y, an agreement that assured that E & Y could not give the documents to another party.[13]  These facts demonstrate that when Regions confidentially disclosed the documents to E & Y, it disclosed them to neither an adversary nor a conduit to an adversary.  Therefore, the court finds that Regions has not waived the work product privilege.

**IV.    Conclusion**

For these reasons, the court concludes that the contested documents are protected by the work product privilege, regardless of whether this court applies the "primary motivating purpose" test or the "because of litigation" test.  Furthermore, Regions has not waived the privilege by its disclosure to E & Y.  Accordingly, Regions' Motion to Dismiss its Petition to Quash the IRS Summons as Moot is due to be granted.  The court will enter a separate order contemporaneously with this Memorandum Opinion.

**DONE** and **ORDERED** this _____8th_____ day of May, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[13]Colloquially, it can be said the privileged documents neither left nor were ever intended to leave the "Cone of Silence."  *See Get Smart: Mr. Big* (NBC television broadcast Sept. 18, 1965) *available in relevant part at* http://youtube.com/watch?v=VEWmn8p_OoA.